**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

AUSSIE PAINTING CORP.,

        Plaintiff,

    v.

ALLIED PAINTING, INC. and
FIDELITY AND DEPOSIT COMPANY
OF MARYLAND,

        Defendants.

No. 1:20-cv-02677-NLH-KMW

**OPINION**

---

**APPEARANCES**:

ELIZA D. STAHL
1050 GRAND BOULEVARD
DEER PARK, NY 11729

    *Attorney for Plaintiff Aussie Painting Corp.*

TERESA M. LENTINI
ALLIED PAINTING INC
1330 N. BLACK HORSE PIKE
SUITE D
WILLIAMSTOWN, NJ 08094

    *Attorney for Defendants Allied Painting, Inc. and Fidelity*
    *and Deposit Company of Maryland*.

**HILLMAN**, District Judge

This case involves a dispute between a contractor and a subcontractor regarding payment for work performed on two bridge painting projects.  Presently pending are Defendants Allied Painting, Inc. and Fidelity and Deposit Company of Maryland's Motion to Dismiss the complaint, and Plaintiff Aussie Painting

Corp.'s Cross-Motion to Amend the complaint.  For the reasons
expressed below, both motions will be denied.

## BACKGROUND

The Court takes it statement of facts from Plaintiff's
Amended Complaint.  At some point prior to January 11, 2018,
Defendant Allied entered into a written agreement with the New
Jersey Department of Transportation ("NJDOT") to engage in work
as part of a public improvement project related to the painting
of bridges on Route 295.  To perform its work under this
contract, Allied then entered into a subcontract agreement with
Plaintiff on January 11, 2018, under which Plaintiff agreed to
provide certain painting services related to the Route 295
Project; the parties then agreed to an amended version of that
subcontract agreement on June 26, 2018.  That contract
specifically outlined the scope of the work Plaintiff had been
subcontracted to perform.

Importantly, Section 8.01 of the Route 295 Subcontract
specified the procedure by which additional work beyond the
scope of the work outlined in the original agreement would be
assigned, and by which Plaintiff could go about receiving
payment for that additional work.  Section 8.01 specifically
requires that requests for compensation for a change in work be
made in writing by Plaintiff prior to the commencement of that

2

work, and states that Allied will issue a Change Order if it

agrees to the additional compensation:

> 8.01   Subcontractor   understands   and   agrees   that
> Subcontractor may be ordered by Contractor to make
> changes in the work consisting of such things as
> additions, deletions, and other modifications that may
> be required by Contractor or OWNER, without invalidating
> this Subcontract Agreement. In the event of any such
> change in the work, the Contract Price will be adjusted
> accordingly, as mutually agreed. Subcontractor agrees
> that prior to the commencement of any change in work
> for which Subcontractor intends to seek additional
> compensation, it shall promptly submit to Contractor
> for review and approval, in writing, any request for
> additional payment prior to the commencement of any work
> or ordering of any materials related to such change in
> work. If the additional compensation sought is
> acceptable to Contractor, Contractor will indicate its
> acceptance   by   issuing   a   written   Change   Order.
> Subcontractor shall have no claim or entitlement for
> any extra or additional work unless the increase
> adjustment in the Contract price for any such extra or
> additional work was first fully agreed upon, in a signed
> writing, prior to the ordering of materials and
> commencement or performance of such extra or additional
> work.

(ECF No. 19-1, Ex. A at § 8.01).

Plaintiff began work on the Route 295 Project on

August 1, 2018.  During the course of that project,

Plaintiff alleges that it performed additional work outside

the scope of the work outlined in the Route 295

Subcontract; specifically, Plaintiff alleges that "despite

plaintiff Aussie's clearly defined scope of work requiring

Aussie to provide only painting services and defendant

Allied to provide traffic control, as soon as Aussie

commenced the Work, Allied required Aussie to provide the traffic control and perform extensive surface cleaning work with power tools, at significant additional expense to Aussie."  (ECF No. 19 at ¶ 15).  Plaintiff alleges that the value of this additional work and time is $146,763.56, and that between August 1, 2018 and March 2020, it has tried on "numerous occasions" to receive payment from Allied for this work, but that Allied has consistently refused.

Then, on January 8, 2019, Aussie and Allied entered into a separate subcontract agreement (the "Route 22 Subcontract") whereby Plaintiff agreed to provide Allied with certain painting services in connection with a separate project, the Route 22 Project, that Allied was contracted to perform for NJDOT.  Plaintiff began work on this project on January 15, 2019.  Related to this project, Defendant Fidelity, as surety, issued a Labor and Material Payment Bond No. PRF9250142 to Defendant, which guaranteed "payments by defendant Allied to its subcontractors, materialmen and laborers for labor performed and materials and equipment provided in furtherance of completing or performing" the Route 22 Project.  Id. at ¶¶ 53-54.

Apparently, certain projects with the NJDOT require contractors to have what the parties refer to as a "QP1/QP2 Certification."  Although Plaintiff did not have such a

certification, the parties agreed that it would work on the Route 22 Project under Allied's certification; NJDOT had granted Plaintiff a waiver on previous projects under similar circumstances.  However, on January 24, 2019, NJDOT issued a stop-work order for Plaintiff's work, due to Plaintiff's lack of a QP1/QP2 Certification.

Allied then sought to terminate the Route 22 Subcontract, which it could not do without receiving NJDOT's permission.  On May 21, 2019, NJDOT both denied Allied's request to terminate the subcontract, and granted Plaintiff a waiver regarding the certification.  Despite this, Allied refused to allow Plaintiff to return to work on the project.  At some point, Plaintiff billed Allied for the work it had performed up to the stop-work order, as well as for costs incurred in mobilizing for the project in the first place and for demobilizing after Plaintiff was removed from the project.  Allied only partially paid, and has since refused to pay $29,243.36 that Plaintiff claims it is owed.

Finally, on March 11, 2020, Plaintiff filed a complaint in this Court against Defendants, as well as the New Jersey Department of Transportation.  (ECF No. 1). After NJDOT filed a motion to dismiss, Plaintiff filed the operative Amended Complaint, dropping NJDOT as a defendant.

(ECF No. 19).  The Amended Complaint includes 11 counts: claims for breach of contract, unjust enrichment, "Services Performed and Materials Provided," and violations of the Prompt Payment Act against Allied related to failure to pay the demanded amounts on both projects, as well as a claim against Fidelity related to its bond guaranteeing Allied's payments on the Route 22 Project.

On August 17, 2020, Defendants filed a motion to dismiss all claims, (ECF No. 31), which Plaintiff has opposed.  In Plaintiff's opposition brief, it specifically requested to be granted leave to file a second amended complaint if the Court found the allegations in its complaint insufficiently pled; in connection with that request, Plaintiff separately filed a "Cross-Motion to Amend/Correct" its complaint.  (ECF No. 38).  That cross-motion, however, simply re-attaches the exact same brief and exhibits filed in opposition to the motion to dismiss, and the relief requested in the "Proposed Order" attached to it is for the Court to simply deny Defendants' motion to dismiss.  (ECF No. 38-13).  Defendants simultaneously filed a reply brief in further support of their motion to dismiss, and a brief opposing the cross-motion to amend. Both motions are ripe for adjudication.

**DISCUSSION**

**I.    Subject Matter Jurisdiction**

This Court has jurisdiction over this action under 28 U.S.C. § 1332, as there is complete diversity of parties and the amount in controversy exceeds $75,000.

**II.   Legal Standard for Motions to Dismiss**

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted) (first citing Conley v. Gibson, 355 U.S. 41, 47 (1957); Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.,

7

40 F.3d 247, 251 (7th Cir. 1994); and then citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

To determine the sufficiency of a complaint, a court must take three steps: (1) the court must take note of the elements a plaintiff must plead to state a claim; (2) the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief. Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664, 675, 679 (2009) (alterations, quotations, and other citations omitted).

A district court, in weighing a motion to dismiss, asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." Twombly, 550 U.S. at 563 n.8 (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Iqbal, 556 U.S. at 684 ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail in the coffin for the 'no set of facts' standard that applied to federal complaints before Twombly."). "A motion to dismiss should be granted if the plaintiff is unable to plead 'enough

facts to state a claim to relief that is plausible on its face.'" Malleus, 641 F.3d at 563 (quoting Twombly, 550 U.S. at 570).

A court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice. S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999). A court may consider, however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). Such documents include "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." Crisdon v. City of Camden, No. 11-cv-02087, 2012 WL 685874, at *2 (D.N.J. Mar. 2, 2012) (quoting Buck v. Hampton Twp. School Dist., 452 F.3d 256, 260 (3d Cir. 2006)). If any other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56. Fed. R. Civ. P. 12(b).

III. **Analysis**

As outlined above, Plaintiff's central claims fall into
essentially four categories: (1) breach of contract claims
against Allied for both projects, (2) unjust enrichment claims
against Allied for both projects, (3) "Services Performed and
Materials Provided" claims against Allied for both projects, and
(4) Prompt Payment Act claims against Allied for both projects.
Defendants remaining claims are two claims for attorneys' fees
under the Prompt Payment Act and a claim against Fidelity for
its bond guaranteeing Allied's payment under the Route 22
Subcontract, which is accordingly dependent on whether Allied is
liable for the amount demanded by Plaintiff.  The Court will
turn first to Plaintiff's breach of contract claims.

A. **Breach of Contract Claims**

As a Court sitting in diversity, New Jersey law applies to
Plaintiff's common law breach of contract claims.  "To prevail
on a breach of contract claim [under New Jersey law], a party
must prove a valid contract between the parties, the opposing
party's failure to perform a defined obligation under the
contract, and the breach caused the claimant to sustain[]
damages." Par Pharmaceutical, Inc. v. Quva Pharma, Inc., No.
3:17-cv-6115-BRM-DEA, 2019 WL 356549, at *10 (D.N.J. Jan. 28,
2019) (quoting EnviroFinance Grp., LLC v. Env't Barrier Co.,
LLC, 113 A.3d 325, 345 (N.J. Super. Ct. App. Div. 2015)).  "As a

general rule, courts should enforce contracts as the parties intended." Ciolino v. Ameriquest Transp. Services, Inc., 751 F. Supp. 2d 776, 778 (D.N.J. 2010).  In interpreting a contract, a court must discern and implement the common intention of the parties." Id. at 779 (citing Tessmar v. Grosner, 23 N.J. 193, 201, 128 A.2d 467 (1957)).

### 1. **Route 295 Subcontract**

Plaintiff's first breach of contract claim alleges that Defendant Allied breached the Route 295 Subcontract by failing to pay Plaintiff for additional work it performed outside the scope of the original contract, but as part of an agreement with Allied.  Defendants have put forth two arguments for why this claim must be dismissed.[1]

---

[1] The Court notes that Defendants' moving brief includes a section with the heading "PLAINTIFF'S AMENDED COMPLAINT FAILS TO ALLEGE SUFFICIENT FACTS TO ESTABLISH THE EXISTENCE OF A CONTRACT, AND, THEREFORE, COUNTS I AND II OF THE AMENDED COMPLAINT MUST BE DISMISSED."  (ECF No. 31-1 at 11).  Their moving brief further includes a discussion on the legal standards under New Jersey law for establishing the existence of a contract.  However, despite this heading and discussion of legal standards, that section of Plaintiffs' moving brief does not then go forward and argue that there was no contract here — instead, Defendants' arguments against Counts I and II of the Amended Complaint focus on the reasons why Defendants believe the terms of the Route 295 and Route 22 Subcontracts govern the dispute and expressly preclude recovery for Plaintiff's claims. Accordingly, the Court will address only those arguments that Defendant actually pursued, and not the separate argument implied by a section heading.

First, Defendants argue that the express terms of the Route 295 Subcontract bar Plaintiff's claim.  Specifically, Defendants point to Section 8.01 of that agreement, which provides the mechanism by which Allied may be paid for additional work it performed that was outside the scope of the work the agreement explicitly provided for.  Section 8.01 requires that, prior to beginning any such additional work, Plaintiff must make a request in writing for compensation, which Defendant must approve by issuing a written Change Order.  (See ECF No. 19-1, Ex. A).  Since Plaintiff's Amended Complaint makes no mention of any written Change Order, and Plaintiff appears to concede that none was ever created by Allied, Defendants argue that under the terms of the Route 295 Subcontract, Plaintiff is not entitled to payment for any additional work it performed and therefore Allied's refusal to pay for that work does not constitute breach.

However, while the terms of the Route 295 Subcontract do appear rather clear, that is not the end of the matter.  As Plaintiff argues in its opposition brief, New Jersey courts have recognized that contractors can sometimes recover payment for additional work done outside of the contractor agreement if the defendant's actions constitute a waiver of contractual requirements mandating written work orders.  See Am. Motorists Ins. Co. v. N. Plainfield Bd. of Educ., A-4680-14T4, 2016 WL

6122867, at *8-9 (N.J. Super. Ct. App. Div. Oct. 20, 2016).
Under New Jersey law, "[t]he 'mere performance of extra work
does not give rise to the waiver of a construction contract
provision requiring that the authority for the extra work be in
writing . . . However, 'the writing requirement may be expressly
or impliedly waived by the clear conduct or agreement of the
parties or their duly authorized representatives.'" Id. at 8-9
(quoting Home Owners Constr. Co. v. Glen Rock, 34 N.J. 305, 316
(1961)). See also Alliance Elec., Inc. v. Atlantic City Bd. of
Educ., No. A-633-01T2, 2004 WL 583211, at *13 (N.J. Super. Ct.
App. Div. March 2, 2004) ("Contractors will be denied payment
unless they can show they complied with the change order
procedures, or that the public entity waived compliance with
those procedures . . ."). "Evidence that satisfactorily shows
that the parties distinctly agreed that an alteration to the
contract would be deemed extra work and that the owner agreed to
pay extra for it is sufficient to establish a waiver of the
contract provision." Richard Samaha Excavating, Inc. v.
Craftmark Corp., 2007 WL 101245, at *2 (N.J. Super. Ct. App.
Div. Jan. 17, 2007) (citing Headley v. Cavileer, 82 N.J.L. 635,
638 (1912)).

      Here, Plaintiff has explicitly alleged that Allied not only
"required" Aussie to perform the extra work it engaged in on the
Route 295 Project, but also that it "issued oral change orders,"

13

despite the contractual requirement that change orders be made in writing. (ECF No. 19 at ¶¶ 15, 18).  According to the Amended Complaint, Plaintiff performed this extra work "pursuant to an agreement with Allied that Aussie would be compensated on a time and materials basis for such extra work." Id. at ¶ 14.  The Court has little difficulty in finding that if Plaintiff is able to put forth evidence sufficient to prove that Allied or its agents actively issued oral change orders and required it to engage in the extra work, or that the parties reached an agreement for payment for extra work, that such evidence would satisfactorily show that the written change order requirement found in the Route 295 Subcontract had been effectively waived. Accordingly, the Court will not grant Defendants' motion to dismiss on this ground.

Defendants next argue that even if Allied did appear to approve of certain extra work, it did not approve of the full extent of the work that Plaintiff ultimately performed and for which Plaintiff is seeking compensation.  However, the arguments on this front by both parties in their briefing would require the Court to assess and weigh evidence in a manner that is more properly saved for a motion for summary judgment.

Those are the only arguments raised by Defendants on this claim in their moving brief or in direct response to arguments put forth by Plaintiff in its opposition brief.  However,

Defendants' reply brief in further support of the motion to dismiss raises an additional argument: that Plaintiff is not contractually entitled to the compensation sought for extra work on the Route 295 Project because it failed to properly report the extra work and the payment amounts requested for it in the manner required by the contract.  This argument was neither raised nor alluded to in Defendants' moving brief.  And this is far from the only new argument raised by Defendants in their reply brief, which largely consists of entirely new bases for why Defendants believe Plaintiff's various claims must be dismissed.

"However, it is well-established that new arguments cannot be raised for the first time in reply briefs."  Pitman v. Ottehberg, No. 10-2538 (NLH/KMW), 2015 WL 179392, at *9 (D.N.J. Jan. 14, 2015) (quoting Elizabethtown Water Co. v. Hartford Cas. Ins. Co., 998 F. Supp. 447, 458 (D.N.J. 1998)).  Instead, "a reply brief's purpose, as evidenced by its name, 'reply brief,' is to 'respond[] to the opposition brief and explains a position that the respondent has refuted.'"  Bernstein v. City of Atlantic City, No. 08-cv-3796 (NLH), 2011 WL 2559369, at *3 (D.N.J. June 27, 2011) (quoting Halprin v. Verizon Wireless Serv., LLC., No. 07-4015, 2008 WL 961239, at *8 (D.N.J. April 8, 2008)).

From the Court's review, it appears clear that after
Plaintiff put forth a series of convincing counterarguments
refuting Defendants' initial bases for dismissal at this stage,
Defendants went searching for a series of new arguments to
sustain their motion, which were hinted at nowhere in their
moving brief and are not directly related to any of their
initial arguments.  The Court declines to consider arguments
which have not had the benefit of full briefing by the parties,
and which Defendant failed to raise in their moving brief
despite clear access to the contracts and contractual provisions
on which they are based.  While Defendants may seek to raise
these arguments again on summary judgment or at a later stage in
this litigation, the Court will not factor them into its
analysis of the present motion to dismiss.

### 2. **Route 22 Subcontract**

Plaintiff's second breach of contract claim alleges that
Allied breached the Route 22 Subcontract by failing to pay
Plaintiff for certain costs related to mobilization and
demobilization from the site of the Route 22 Project.
Defendants' moving brief argues that Plaintiffs' claim must be
dismissed because they are seeking payment for demobilization
work done after termination.[2]

---

[2] Defendants' reply brief again raises a new argument for
dismissal of this claim, contending that the Prime Contract

Defendants specifically point the Court to Section 7.02 of the Route 22 Subcontract, which provides that Allied "may, at any time, without cause and for convenience, terminate this Subcontract Agreement, in whole or in part," and that in the event of such a termination, "at its sole right, remedy and relief, shall be entitled to payment for work properly performed and completed up to the effective date of the termination . . . [and] agrees not to seek, and agrees that it shall not be entitled to, any further payment or compensation under this Subcontract Agreement." (ECF No. 19-2, E. 2). Defendant argues that since the demobilization work occurred after the stop-work order, Plaintiff cannot recover payment for it.

However, there are two flaws in Defendants' argument here. First, Plaintiff has specifically alleged that Defendant was not entitled to terminate the Route 22 Subcontract without the permission of NJDOT. In fact, the very same provision of the Route 22 Subcontract cited by Defendants actually supports

---

incorporated by the Route 22 Subcontract does not allow Allied to subcontract for mobilization, and therefore Plaintiff was not entitled to payment for such work. However, as explained above, the Court will not consider any arguments at this stage that were not initially raised in Defendants' moving brief. This decision is further strengthened as to this individual new argument because Defendants failed to provide the Court with the pages of the contract containing the specific provision allegedly discussing subcontracting for mobilization, filing only separate excerpts from the contract and informing the Court that the document is available online, without providing any link to the specific document. (See ECF No. 44-1 and 44-2).

Plaintiff's claim, as it states that if the Owner of the project is a State department and the subcontractor is a "Disadvantaged Business Enterprise," Allied must follow the State department's procedures for termination.  See id.  The Amended Complaint explicitly alleges that Allied had submitted this subcontract to the NJDOT "towards fulfillment of defendant Allied's Disadvantaged Business Enterprise("DBE") participation goals required by the [Route 22] Contract," and that after the January 24, 2019 stop-work order, Allied sought NJDOT's permission to terminate Plaintiff from the project.  (See ECF No. 19 at ¶¶ 19, 35-38).  Plaintiff further alleges that Allied's request to terminate the subcontract was denied by NJDOT on May 21, 2019.

Accordingly, Plaintiff has clearly alleged that the Route 22 Subcontract was not terminated at the time it stopped working and began demobilization from the project in January of 2019. Assuming Plaintiff's allegations to be true for the purposes of analyzing the present motion to dismiss, as the Court must, the Court finds that Plaintiff has adequately shown at the pleadings stage that payment for this work would not be clearly precluded by Section 7.02 of the Route 22 Subcontract.  Plaintiff has therefore sufficiently pled its breach of contract claim.

Second, Plaintiff's Amended Complaint does not actually allege that all of the work that they seek payment for on the Route 22 Project relates to "demobilization" that occurred after

the stop-work order; meaning it is entirely possible that some of the payments sought by Plaintiff may be for work done prior to that, such as the mobilization work Plaintiff's opposition brief discusses.  That being the case, even if Defendants' argument regarding the Subcontract precluding payment for post-termination work was persuasive, the Court is not convinced that it would actually necessitate the full dismissal of this claim for breach.  For these reasons, Defendants' motion to dismiss will be denied as to Count II.

This holding further applies to Count III, which is Plaintiff's bond claim against Fidelity as surety to the Route 22 Project.  Both parties appear to agree that Fidelity's guarantee of Allied's payments on the Route 22 Subcontract "require[s] the surety to stand in the shoes of a defaulting principal and to be subject to any claim for which the principal would have been liable."  Gloucester City Bd. of Educ. v. American Arbitration Ass'n, 755 A.2d 1256, 1265 (N.J. Super. Ct. App. Div. 2000).  Accordingly, the claim against Fidelity stands or falls alongside Plaintiff's claim against Allied for breach of the Route 22 Subcontract.  As the Court has permitted Plaintiffs' breach of contract claim to proceed, Defendants' motion to dismiss will be denied as to Count III as well.

### B. **Unjust Enrichment Claims**

Plaintiff also asserts claims for unjust enrichment related to the work done, but not paid for, on both projects discussed above.  "To establish a claim for unjust enrichment under New Jersey law, 'a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust.'"  Novotek Therapeutics Inc. v. Akers Biosciences, Inc., No. 1:19-cv-13668-NLH-KMW, 2020 WL 3056441, at *4 (D.N.J. June 9, 2020) (quoting Stewart v. Beam Global Spirits & Wine, Inc., 877 F. Supp. 2d 192, 195 (D.N.J. 2012)).  "The plaintiff must also 'show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights.'"  Trusted Transportation Solutions, LLC v. Guarantee Ins. Co., No. 1:16-cv-7094-NLH-JS, 2020 WL 2111026, at *2 (D.N.J. May 4, 2020) (quoting Iliadis v. Wal-Mart Stores, Inc., 922 A.2d 710, 723 (N.J. 2007)).  "The enrichment of one party at the expense of the other is not unjust where it is permissible under the terms of an express contract." Hassler v. Sovereign Bank, 644 F.Supp.2d 509, 519 (D.N.J. 2009).

Here, Defendants only argument in their moving brief is that Plaintiff has failed to show that it expected remuneration for the extra work it performed on the Route 295 Project and for

the unpaid work on the Route 22 Project.  This argument again appears to be based directly on Defendants' earlier arguments that the Route 295 and Route 22 Subcontracts both expressly precluded the payments Plaintiff seeks, which Defendants argue would therefore demonstrate that Plaintiff could not have expected remuneration for their work.

However, the Court has already allowed Plaintiffs' breach of contract claims to proceed despite those exact arguments. Additionally, Plaintiff has expressly pled that it performed the extra work on the Route 295 Project "pursuant to an agreement with Allied that Aussie would be compensated on a time and materials basis for such extra work," and that it performed the Route 22 work it has not been paid for prior to its actual termination.  The Court therefore finds that Plaintiff has adequately pled facts that would support its argument that it did in fact expect remuneration for the work it seeks payment for on both projects.  Based on this, the Court finds that Plaintiff has sufficiently pled unjust enrichment so as to avoid dismissal at the pleadings stage.

C. **Services Performed and Materials Provided Claims**

Plaintiff further brings claims for "Services Performed and Materials Provided," which essentially appear to simply incorporate its previous allegations regarding breach of contract.  Defendant, in its moving briefs, has interpreted

21

these claims as essentially being "book account" claims under
New Jersey law.  As Plaintiff has, rather than disputed this
characterization, appeared to concede its accuracy and instead
disputed Defendants' related argument for why it must fail, the
Court will similarly interpret Plaintiffs' claims under Counts
VI and VII as such for the sake of ruling on the present motion
to dismiss.

Under New Jersey law, a book account claim "'is similar in
nature to a breach of contract, except that 'the amount owed for
services rendered can be proved by a statement of account.'"
CPS MedManagement LLC v. Bergen Regional Medical Center, L.P.,
940 F.Supp.2d 141, 151 (D.N.J. 2013) (quoting Manley Toys, Ltd.
v. Toys "R" Us, Inc., Civ. No. 12-3072, 2013 WL 244737 (D.N.J.
Jan. 22, 2013)).  And "to sufficiently plead a book account
claim, a plaintiff must allege the same elements as a breach of
contract claim."  Darush L.L.C. v. Macy's Inc., 2012 WL 2576358,
at *2 (D.N.J. Apr. 5, 2013) (citing Honeywell Int'l, Inc. v.
O.A. Peterson Const. Co., 2008 WL 2340278, at *5 (N.J. Super.
Ct. App. Div. June 10, 2008)).  Here, Defendants' moving brief
argues only that because Plaintiff's breach of contract claims
fail, so too must there claims under Counts VI and VII;
accordingly, for the same reasons the Court denied Defendants'
motion to dismiss as to Plaintiff's breach of contract claims,
it will deny it as to these claims as well.

22

### D. **Prompt Payment Act Claims**

Finally, Counts VIII and IX allege that Plaintiff has violated New Jersey's Prompt Payment Act, and Counts X and XI pursue attorneys' fees under that same statute.  While few courts have addressed the specific elements of a PPA claim, a prior court in this District faced with claims under this act analyzed the statute's language and found that "a well-pled claim under the PPA must include the following elements":

> (1) the contractor has performed in accordance with the provisions of the contract;
>
> (2) the billing for the relevant work has been approved and certified by the owner or the owner's authorized agent, or the owner failed to provide a written statement of the amount withheld the reason for withholding within 20 days after receiving the billing; and
>
> (3) the owner has not paid the approved/certified amount within 30 days after the billing date.

Refine Technology, LLC v. MCC Development, Inc., No. 17-5548, 2018 WL 3159874, at *5 (D.N.J. Feb. 21, 2018) (citing N.J.S.A. § 2A:30A-2(a)).

Defendants argue that Plaintiffs have failed to demonstrate any of the relevant elements.  However, the Court's review of the Amended Complaint finds the opposite.  Plaintiff's Prompt Payment Act claims both directly incorporate all prior allegations in the complaint.  And, throughout the complaint, Plaintiff directly alleges, repeatedly, that (1) it performed the extra work on the Route 295 Project and the work it was not

paid for on the Route 22 Project in accordance with the relevant Subcontracts, (2) Allied approved of that work (and in fact directed it to be performed), and (3) Allied has not, over a year later, paid Plaintiff for the work performed, despite having been billed for it numerous times and having been paid by NJDOT for the projects.

Ultimately, Defendants' arguments on this front appear to again be predicated on their assertions for why Plaintiff's breach of contract claims should be dismissed.  The Court finds that Plaintiff has sufficiently pled its claims for violations of the Prompt Payment Act, and will deny Defendants' motion to dismiss as to Counts VIII-XI.[3]

---

[3] The Court notes that Plaintiff, in addition to requesting within its opposition brief that the Court grant it leave to amend the complaint if any of its claims were dismissed as inadequately pled, has separately filed a motion to amend.  (ECF No. 38).  That motion, however, fails to attach a proposed amended complaint as required by Local Rule 15.1(a), and instead attaches only the same briefing filed in opposition to the motion to dismiss.  Since the Court has no proposed amendments before it and has permitted each of Plaintiff's claims as pled in the currently operative Amended Complaint to proceed past the pleadings stage, it will deny the motion to amend as moot.  To the extent that Plaintiff wishes to further amend its complaint, it may re-file a motion that comports with Local Rule 15.1(a). To the extent that Defendants raised new arguments aimed against any of Plaintiff's claims in their brief opposing the motion to amend, Defendants may raise those arguments in response to any relevant claims found in any further amended complaint filed by Plaintiff, or at a later stage of this action.

## CONCLUSION

For the reasons expressed above, Defendants' motion to dismiss (ECF No. 31) and Plaintiff's motion to amend (ECF No. 38) will both be denied.

An appropriate Order will follow.


Date: March 15, 2021                    /s Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.